UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
RAFAEL PANTOJA,

                           Petitioner,

             - against -

UNITED STATES OF AMERICA,

                         Respondent.
------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

13 Civ. 2781 (BMC)

**COGAN**, District Judge.

This is a proceeding for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, in which petitioner *pro se*, a disbarred attorney, seeks to vacate the sentence I imposed on him following his guilty plea to two counts of bank fraud conspiracy. I sentenced him to, *inter alia*, 18 months' custody to run concurrently with the undischarged portion of a state court sentence that he was then serving for a different bank fraud. Petitioner claims that, in evaluating the factor of specific deterrence under 18 U.S.C. § 3353, I improperly considered his state court conviction in determining his sentence because he had (and apparently still has pending) allegedly "valid" claims to vacate that conviction, and that, with respect to his federal conviction, I did not consider the alleged complicity of the banks he defrauded. He further contends that I arrived at an improper loss and restitution amount by combining his state and federal frauds, and that this was error because he had paid restitution for the state crime at the time he was sentenced for that crime.

Petitioner's claims are procedurally barred because he failed to raise these claims prior to his sentence or to appeal his sentence and he has no excuse for failing to do so. The claims are also without merit. The petition is therefore denied.

## BACKGROUND

To understand the background of the petition, there are three other, related legal proceedings involving petitioner that need to be explained: (1) the criminal proceedings and conviction by guilty plea and sentence before me on his federal bank fraud claims, which led to the sentence that petitioner challenges in the instant proceeding; (2) a subsequently committed, but previously sentenced, bank fraud, charged as grand larceny under state law; and (3) collateral proceedings to challenge that state court conviction, brought both in federal and state court, the latter of which appears to still be pending.[1]

The scheme to which petitioner pled guilty before me involved fraudulently obtaining mortgage loans for eight properties located in Brooklyn and the Bronx between 2001 and 2003. Petitioner would find residential properties that were abandoned, or in which the owner was in default on an existing mortgage or deceased, and falsify the transfer of ownership through a forged deed to various corporations that he had formed. Another member of the conspiracy would notarize the signatures of the owners that petitioner had forged. Petitioner and another co-conspirator, Annette Raia, would then locate straw buyers, falsely representing to them that this was an investment opportunity, and each straw buyer would be paid between $10,000 and $20,000. Raia would obtain personal information from the straw buyers, combine it with fraudulent financial information as to each, and then submit it with a fraudulent appraisal

---

[1] There are other proceedings involving petitioner that are not material to the resolution of the instant proceeding. Petitioner has a long criminal history as a fraudster and has commenced several actions as a *pro se* plaintiff.

through an on-line mortgage application program known as the "Fly Program" run by ABN

Amro Mortgage Group, Inc. ("ABN Amro"), which would then fund the mortgage. Each

mortgage went into default after being funded, and ABN Amro or its successor, CitiMortgage,

Inc., sustained a net loss after the foreclosure or other resale of about $1.3 million.

Following his guilty plea, in which he had clearly confessed to the charged activity, but

prior to sentencing, petitioner, although represented by counsel, filed a *pro se* motion to

withdraw his guilty plea. That motion was based on the commencement by the Government and

49 states of a civil action entitled United States of America v. Bank of America *et al*., Civil

Action 12-0361 (D. D. C.) (the "Bank Action"), in which the plaintiffs contended that a number

of financial institutions, including Citibank, N.A. and its affiliate, CitiMortgage, Inc. (together,

"Citi"), had engaged in improper and deceptive lending practices against consumers, and had

submitted false mortgage guarantee claims to federal mortgage agencies. Petitioner, referring to

this as "newly discovered evidence," argued, in essence, that the Government had failed to

produce evidence related to this suit; that such evidence should have been produced to him under

Brady v. Maryland, 373 U.S. 83 (1963); and that petitioner would not have pled guilty if he

knew that ABN Amro had violated the law because there was, in fact, no "victim" of his crime.

In response, the Government pointed out, among other things, that ABN Amro was not

one of the banks named in the Bank Action and had been acquired by Citi well after petitioner

defrauded ABN Amro; that no one on the prosecution team had any involvement in the civil

action brought in the District of Columbia, and thus there was no obligation under Brady to

produce any material related to the civil action; and that, most fundamentally, the Bank Action

was immaterial to petitioner's guilty plea because petitioner had not claimed, could not show,

and the Bank Action did not allege, that the Government had information that ABN Amro was

somehow complicit in helping petitioner and his co-conspirators commit the fraud. Petitioner then withdrew his motion, and proceeded to sentencing. He was sentenced as noted above on October 15, 2012. He did not appeal his sentence.

Well prior to my imposition of sentence on these federal charges, petitioner had been sentenced for his state court bank fraud conviction, arising from crimes he had committed between 2004 and 2005 (i.e., one to three years after he committed the acts that led to the federal charges on which I sentenced him in 2012). He had pled guilty to Grand Larceny in the First and Second Degrees in Westchester County Court, and been sentenced to an indeterminate term of 4 ½ to 9 years' custody on March 14, 2008.[2] His conviction covered an array of misconduct, but arose principally from his defrauding three other financial institutions, most notably Banco Popular de Puerto Rico, into making false mortgage loans based on fraudulent information, as well as representing himself as an attorney and taking money from several individuals as a supposed down payment for some of the property. His counsel on direct appeal was permitted to withdraw under Anders v. California, 386 U.S. 738 (1967); petitioner filed his own *pro se* brief alleging lack of subject matter jurisdiction and failure of the sentencing court to advise petitioner of applicable statutory minimums. The Appellate Division summarily affirmed the conviction, and the New York Court of Appeals denied leave to appeal. People v. Pantoja, 87 A.D.3d 555, 927 N.Y.S.2d 789 (2nd Dep't 2011), leave to appeal den., 18 N.Y.3d 961 (2012).

Finally, and again prior to my imposition of sentence on the federal charges, plaintiff commenced a proceeding seeking relief from his state court conviction in front of Judge Gleeson primarily under 28 U.S.C. § 1983. Judge Gleeson dismissed it in part for failure to state a claim,

---

[2] Petitioner's sentence on the federal charges was delayed not only because of his motion to withdraw his plea, but primarily because he had entered into a cooperation agreement with the Government, which ultimately led to the issuance of 5K1.1 letter that I considered at sentencing.

but to the extent petitioner was attempting to state claims under 28 U.S.C. § 2254, Judge

Gleeson transferred the remainder to the Southern District of New York, since petitioner had

been convicted in Westchester County. Pantoja v. New York State Div. and Bd. of Parole, No.

11-cv-3629, 2011 WL 6708146 (E.D.N.Y. Dec. 21, 2011). It was then assigned to Judge Seibel.

Petitioner presented a number of grounds in his amended petition before Judge Seibel, but they

included an argument parallel to the one that he had raised before me in his motion to vacate his

guilty plea, namely, that he had recently discovered new evidence (a criminal investigation or

charges) involving Banco Popular, and he would not have pled guilty to the state charges if he

been made aware of those facts, as to which the state prosecutor should have informed him under

Brady. Judge Seibel dismissed the §2254 petition as unexhausted, see Pantoja v. New York

State Division and Board of Parole, No. 11-cv-9709, 2013 WL 865905 (S.D.N.Y. March 8,

2013), adopting Report and Recommendation, 2013 WL 866869 (S.D.N.Y. Jan. 10, 2013), and

petitioner asserts in the instant §2255 petition that he is presently pursuing those claims through

a motion in state court under N.Y. C.P.L. §440.10.

## DISCUSSION

### I. Petitioner's claims are procedurally barred

"A motion under § 2255 is not a substitute for an appeal[,]" United States v. Munoz, 143

F.3d 632, 637 (2d Cir. 1998). Generally, "a claim may not be presented in a habeas petition

where the petitioner failed to properly raise the claim on direct review." Reed v. Farley, 512

U.S. 339, 354 (1994). This bars a petitioner from asserting claims, constitutional or otherwise,

that he failed to raise at trial, sentencing, or on direct appeal, "unless he can establish both cause

for the procedural default and actual prejudice resulting therefrom." DeJesus v. United States,

161 F.3d 99, 102 (2d Cir. 1998); Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992).

5

"Cause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available ... [or that] the procedural default is the result or ineffective assistance of counsel.'" Possett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting, Murray v. Carrier, 477 U.S. 478, 488 (1986)). Prejudice, furthermore, "must be 'actual prejudice' from the alleged violations [.]" Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998). If he cannot meet these requirements, a petitioner's claims will only be considered if he presents facts proving "actual innocence." Id.

Read liberally, petitioner's reply memorandum offers two arguments for cause and prejudice. First, he claims that he has only recently discovered that Citi, one of the defendants named in the Bank Action, is a successor to ABN Amro and has settled the Bank Action, which he views as an acknowledgement of wrongdoing. Because he did not previously have this information, petitioner alleges, he could not have raised it at sentencing or on appeal.

This claim is old news, not newly discovered evidence.[3] The argument that petitioner is raising now based on the Citi's settlement of the Bank Action is nearly identical to the claim he raised in his motion to withdraw his guilty plea. The fact that he would like to go forward with discovery on it in the instant proceeding (as he has requested), but that he chose to forego that opportunity when the Bank Action was first commenced, does not constitute "new evidence" that rises to the level of cause for not pursuing his motion to vacate or taking an appeal from the sentence. The only reason this evidence is "new" to petitioner is because he voluntarily chose

---

[3] It is not clear to me whether the Bank Action is the same action that petitioner references involving the Citi settlement in the instant petition. It may be that the Government commenced a separate action alleging that Citi defrauded Fannie Mae through fraudulent underwriting of mortgages, and it is that action which Citi settled. I am assuming they are the same action, as the Government has treated it that way in its opposition to the instant habeas proceeding and petitioner did not point out otherwise in his reply, but it makes no difference. For the reasons set forth below, even if there was a separate Government action against Citi that subsumed petitioner's eight fraudulent mortgages, its settlement, and any conduct by Citi leading to the lawsuit, would be just as immaterial to petitioner's claims as the Bank Action.

not to pursue it when he withdrew his motion to vacate his guilty plea. Indeed, petitioner's Pre-Sentence Investigation Report noted the fact that CitiMortgage, Inc. had succeeded to ABN Amro's mortgage interests. He could have pursued his motion to withdraw his guilty plea, or raised it at sentencing, but chose not to. This does not constitute cause for excusing his earlier failure to assert this argument.

Petitioner's second effort to demonstrate cause is that his attorney retired after his sentencing and that is why he failed to file his notice of appeal. Petitioner is a disbarred attorney and because he has had legal training and experience, as well as considerable experience as a *pro se* litigant, he is not entitled to the same level of deference as would be the usual *pro se* litigant, although he is entitled to some. See Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010); see also Parent v. New York, 485 Fed. App'x 500 (2d Cir. 2012) ("as a suspended attorney with over twenty years of experience ... Koziol is not entitled to such "special solicitude"). But more importantly, this was dealt with at petitioner's sentencing. His attorney announced at sentencing that the sentencing would be his final service as a lawyer. As a result, I very clearly advised petitioner that it was his (petitioner's) responsibility to see to it that a notice of appeal was filed if he wanted to appeal:

> If you want to appeal either your conviction or the sentence, even though Mr. Jacobs says he is going to do it, it remains your responsibility to make sure that a Notice of Appeal gets filed with the with the Clerk within ... fourteen days ... .
>
> Mr. Jacobs can do that for you. You can do it yourself. If you fill out an in forma pauperis affidavit, the Clerk will do it for you. But again, it has to be your responsibility to see it gets filed.

Petitioner's failure to heed this advice does not constitute "cause" for his procedural default. Moreover, as shown below, he has suffered no prejudice because his argument does not, and never did, have any merit.

7

Finally, petitioner contends in passing that he is "actually innocent." He asserts that his misrepresentations to ABN Amro could not have been "material", since it was committing its own fraud. However, factual innocence refers to not having committed the deliberate acts charged in the crime. It does not refer to subsequent evidence that may show the failure to satisfy a particular element of the crime. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted).

## II. Petitioner's claims are without merit

Petitioner fares no better on the merits. His first point is that I should not have considered his state court conviction at sentencing because that conviction is invalid. But it is not invalid. Petitioner simply says that it is. He pled guilty, appealed, the Appellate Division affirmed the conviction, and the New York Court of Appeals denied leave to appeal. The fact that he has a §440.10 motion pending in state court is no indicia at all of any infirmity in the conviction. Indeed, petitioner goes so far as to argue that Judge Seidel recognized the invalidity of the conviction by directing him to pursue his claim in state court, but there is nothing in her decision that even hints that she thought the claim had any validity; she simply dismissed his §2254 claim as unexhausted.

It is of course possible that petitioner's pending §440.10 motion, or a yet-to-be-filed §2254 petition based on exhausted claims, will result in the vacatur of petitioner's state court conviction. (Since petitioner has demonstrated a propensity to distort courts' comments, I would emphasize that while I am not passing on the merits of his §440.10, I have my doubts.) If that happens, then petitioner may have grounds for a second and successive §2255 petition before me, as he will fall under cases like United States v. Davis, 753 F. Supp. 529 (S.D.N.Y. 1990),

8

upon which his present reliance is premature. At the present time, he can demonstrate no infirmity upon my considering his state court conviction as part of his sentencing.

Petitioner's second point is essentially the same one he made, and then withdrew, in his motion to vacate his guilty plea – the Bank Action shows that ABN Amro, and, therefore, its successor, Citi, committed mortgage fraud and thus he is not guilty. The only new fact he offers is that Citi has settled the Bank Action.[4]

Although I did not have occasion to rule on petitioner's claim in his motion to vacate his guilty plea, I did not think much of it then and I think no more of it now. Petitioner was a central player in the fraud of which he was convicted. He has never alleged that he, or Raia, or anyone else connected with his fraud, ever had a conversation or agreement with anyone at ABN Amro in which ABN Amro agreed to be a party to their fraud. Why would it? The still-undisputed facts at petitioner's sentencing were that the bank made loans based on fraudulently inflated appraisals. The only victims as a result of petitioner's fraud were ABN Amro, which loaned more than the properties were worth, and perhaps the straw purchasers, who were not told that their credit would be ruined. Nor has there ever been a dispute as to the amount of loss ABN Amro sustained (and, indeed, any loss would be sufficient to prove the point), when it was forced to sell the properties for far less than the mortgage proceeds it gave to petitioner and his co-conspirators based on the phony appraisals that the conspirators submitted. Even if ABN Amro had sloppy lending practices, or even if it defrauded consumers in ways separate and apart from petitioner's fraud, the net loss on the sales, based on petitioner's phony appraisals, demonstrates the fallacy and immateriality of petitioner's argument concerning ABN Amro's and Citibank's conduct.

---

[4] See fn. 3 supra.

The common theme in petitioner's challenge to both his state and federal convictions seems to be that if the banks he defrauded committed their own frauds, or at least did so with respect to the mortgages he fraudulently caused them to issue (e.g., by getting a federal agency to guarantee those mortgages), then petitioner's fraud gets washed away, even though his fraud and the banks' alleged fraud were independent of each other. That is just wrong. It is just as much of a crime to defraud a fraudster as anyone else. And the losses these banks suffered were properly for purposes of restitution because the banks went out of pocket on the mortgage loans.

Petitioner's third claim asserts that I improperly combined the losses on from his state fraud with his federal fraud in determining his sentence. The argument makes little sense, as the transcript accurately reflects that I did exactly the opposite, disclaiming any intent to include the losses from his state fraud claims in his federal fraud claims, and computing the loss amount, as did the Presentence Investigation Report, solely on the basis of the eight properties that formed the basis of his federal conviction. There was considerable discussion of the methodology for determining that loss, both in petitioner's counseled pre-sentence submission and at sentencing, and petitioner and his counsel both ultimately agreed to withdraw the objection and did not contest the method that Probation and I used to determine the loss and resultant restitution obligation. Petitioner's misreading of the record does not result in a valid claim.

## III. A further hearing is not required

Finally, I conclude that there is no need to hold a further hearing on the instant §2255 petition. In a § 2255 petition, a court must hold an evidentiary hearing "[u]nless the motion and files and records of the case conclusively shows that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing is not required "when the allegations on a motion ... merely contradict the record, are inherently incredibly, or are simply conclusory." United States

v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992). Even assuming the factual statements that petitioner makes are true (except where they are contradicted by written documents), his claims are still procedurally barred and without merit.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**

s/ BMC

_____
U.S.D.J.

Dated: Brooklyn, New York
      August 1, 2013